**In re Donald J. TREVINO, d/b/a Don's Wood Products, Debtor.**

**Bankruptcy No. 5-83-00465.**

United States Bankruptcy Court, M.D. Pennsylvania.

Sept. 29, 1987.

Charles A. Szybist, Williamsport, Pa., former counsel for Trevino, movant.

Mary A. Osgood, Syracuse, N.Y., for movant, Trevino.

William L. Knecht, Williamsport, Pa., Trustee for Estate.

Edward H. Owlett, III, Wellsboro, Pa., for Citizens & Northern Bank.

## MEMORANDUM AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

Presented by the debtor for consideration in this reopened Chapter 7 proceeding are four separate motions. They are as follows:

1. Debtor's Motion to Convert to Case under Chapter 11

2. Motion to Vacate Order of 6/12/85 Terminating Automatic Stay and to Set Aside Foreclosure and Sheriff's Sale

3. Motion to Avoid Liens Impairing Debtor's Exemptions

4. Motion to Disqualify Owlett and Lewis Law Firm Due to Conflict of Interest

They will be considered separately.

**1. Motion to Convert to Case under Chapter 11**

The relevant allegations in this motion are as follows:

1. As more fully set forth in Movant's affidavit attached hereto and made a part hereof, Movant's major creditor Citizens and Northern Bank (C & N Bank) adamantly and aggressively opposed Movant's rehabilitation efforts at every turn and took steps in and out of these bankruptcy proceedings to force the liquidation of his busi-

ness; and this, combined with seriously inadequate legal counsel at a critical stage and acrimonious divorce proceedings during the same period, adversely affected Movant's ability to present a Plan of Reorganization to this Court.

2. Thus, on December 30, 1983, this Court entered an order converting Movant's Chapter 11 case to a case under Chapter 7.

3. On August 16, 1984, this Court entered an order releasing Movant from all dischargeable debts under Chapter 7 of the United States Bankruptcy Code, and a final order discharging the Movant-Debtor was issued by this Court on May 1, 1985.

4. On May 24, 1985, the Movant's bankruptcy case was reopened as the result of a motion filed by William Knecht (the trustee in the above noted Chapter 7 proceedings) to reopen this case because of a lawsuit filed by Movant against C & N Bank a year earlier.

5. Movant believes that the interests of all creditors, both secured and unsecured, will be best served if this case proceeds under Chapter 11.

6. Movant is eligible to be the Debtor under Chapter 11 of the United States Bankruptcy Code.

The sole issue raised by this motion is Movant's legal right to have the case reconverted to one under Chapter 11. In this connection Movant argues that since debtor was eligible under 11 U.S.C. § 109 to be the debtor in the original Chapter 11 proceeding, he is somehow eligible to be the debtor once again in another Chapter 11 proceeding by converting this matter from one under Chapter 7 (closed but recently reopened) to Chapter 11.

Movant acknowledges that debtor's original Chapter 11 proceeding was converted to one under Chapter 7 by Order of this Court dated December 30, 1983. In the Memorandum leading to the entry of that order the following appears:

"Section 1112 of Title 11 U.S.C.A. deals with conversion or dismissal of a case under Chapter 11. Paragraph (b) thereof provides, *inter alia*, as follows:

(b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, which is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

It cannot be seriously questioned that if debtor is allowed to continue its reorganization, the events described in (1) and (2) above will occur. It would be unconscionable to allow a debtor so hopelessly insolvent to continue to the detriment of its principal creditor.

It should be noted that the agreements underlying the debts involved herein relate back to April 30, 1977, as evidenced by Exhibit "A" to the Bank's Application to Enjoin the further use of its collateral. Uncontested by the debtor, the exhibit shows graphically that virtually no significant payments were made from that date to the present. (Underscoring supplied). On August 5, 1983, the Sheriff of Tioga County levied on all assets of the Defendant and a Sheriff's Sale was scheduled for August 24, 1983. The Defendant filed his Petition in Bankruptcy on August 24, 1983.

In view of the foregoing, it is clearly in the best interests of creditors and the estate that this case be converted to a case under Chapter 7."

■ There is no dispute that said Order was affirmed by Judge Muir on July 9, 1984 and no further appeal was taken. Movant also argues that:

"The basic policy underlying the Code conversion procedure under 11 U.S.C. § 706 is that a debtor should always be given the opportunity to repay his debts, and to effectuate this policy, section 706 established a liberal standard for conversion of a liquidation case. See 3 Collier

on Bankruptcy Manual ¶ 706.01 (3rd ed. 1984)."

Neither the language of 11 U.S.C. § 706 nor the history and revised notes support this argument. In fact, paragraph (a) of § 706 in relevant part provides as follows:

"(a) The debtor may convert a case under this chapter to a case under Chapter 11, 12, or 13 of this title at any time, *if the case has not been converted under section 1112, 1307, or 1208 of this title....*" (emphasis added).

Notes of the Committee on the Judiciary, Senate Report No. 95–989 indicates that subsection (a) of this section gives the debtor a one-time absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already been once converted from Chapter 11 or 13 to Chapter 7, then the debtor does not have that right. The policy of the provision is that the debtor should always be given the opportunity to repay his debts and a waiver of the right to convert a case is unenforceable. The decision whether to convert, however, was left in the sound discretion of the Court, based on what will most inure to the benefit of all parties in interest.

With regard to Movant's position that the debtor should always be given the opportunity to repay his debts, there can be no debate. It is difficult, however, to understand Movant's argument, that to do so, he must somehow be allowed to convert these proceedings to one under Chapter 11. In his current position, debtor is free to repay any debts he chooses in a manner best suited to his financial situation. Similarly, Movant is free to pursue in whatever fashion he deems best suited to his situation any and all claims he has outstanding. Since the relief requested in the Motion is specifically proscribed by the Bankruptcy Code, debtor's request must, therefore, and hereby is, denied.

**2. Motion to Vacate Order of 6/12/85 Terminating Automatic Stay And to Set Aside Foreclosure and Sheriff's Sale**

The relevant allegations in said Motion are as follows:

2. On August 24, 1983, the Movant filed a petition under Chapter 11 of the United States Bankruptcy Code.

3. On December 30, 1983, this Court entered an order converting Movant's Chapter 11 case to a case under Chapter 7.

4. On August 16, 1984, this Court entered an order releasing Movant from all dischargeable debts under Chapter 7 of the United States Bankruptcy Code, and a final order discharging the Movant-Debtor was issued by this Court on May 1, 1985.

7. On May 24, 1985, pursuant to a motion filed by Williams Knecht, trustee in the above noted Chapter 7 proceedings, to reopen this case because of a lawsuit filed by Movant against C & N Bank a year earlier, this case was reopened, and the automatic stay provisions of 11 U.S.C. § 362 halted the foreclosure proceedings on Movant's residence.

9. Nonetheless, on June 11, 1985, C & N Bank through its counsel Owlett and Lewis filed a motion with an attached stipulation requesting relief from the automatic stay provisions of 11 U.S.C. § 362, alleging, among other things, lack of adequate protection.

10. June 12, 1985—the next day—this Court granted an order relieving C & N Bank from all stays and giving them permission to foreclose on the mortgage and enforce their liens against Movant's residence.

11. A foreclosure and Sheriff's sale were held, and Movant was ultimately evicted from his residence.

12. The record is clear that the Movant was given no notice of said motion requesting relief from the automatic stay.

13. Thus, because the order granting relief from the automatic stay provisions of 11 U.S.C. § 362 was obtained in clear violation of the notice requirements of 11 U.S.C. § 362, the subsequent foreclosure and Sheriff's sale of said exempt residence are void and should be set aside.

The answer filed by Citizens & Northern Bank contains the following responses:

4. Denied. It is denied that on August 16, 1984, this Court entered an Order releasing Movant from all dischargeable debts under Chapter 7 of the United States Code; and, on the contrary, it is averred that on August 16, 1984, your Honorable Court entered an Order captioned "Discharge of Debtor" which, among other provisions set forth therein, released the Debtor from all dischargeable debts. By way of further answer to the allegations of paragraph 4, it is denied that a final order discharging the Movant-Debtor was issued by the Court on May 1, 1985; and, on the contrary, it is averred that on May 1, 1985, your Honorable Court issued an Order discharging William L. Knecht, Esquire, as the Trustee of the bankruptcy estate of Donald J. Treveino and closing the Chapter 7 case.

7. Admitted in part and denied in part. It is admitted that on May 24, 1985 this case was reopened, based upon the motion filed by Williams Knecht, but is denied that the automatic stay provisions of 11 U.S.C. Section 362 halted the foreclosure proceedings. By way of further answer, Respondent avers that the Movant by and through his attorney at the time, Michael E. Groulx, requested and received an exparte order dated June 3, 1985, from the Court of Common Pleas of Tioga County staying the foreclosure proceeding "pending the determination and outcome of the William Knecht application to reopen the bankruptcy estate." In his petition to stay the sale, Mr. Groulx averred that if the application to reopen was granted, the real property would be under the jurisdiction of the Bankruptcy Court and, therefore, it was subject to the automatic stay provisions of the Code.

9. Admitted in part and denied in part. It is admitted that on June 11, 1985, Citizens & Northern Bank through its counsel, Owlett & Lewis, P.C., filed a motion with your Honorable Court to approve a stipulation. The stipulation was a consent by William Knecht, Esquire, the Trustee of the bankruptcy estate of Donald J. Trevino, setting forth the fact that that the Trustee did not have any intention to review or administer the Debtor's real property and that the sole purpose of reopening the estate was for the purpose of reviewing the suit filed by Movant.

It is denied that said motion was a Motion For Relief From Stay; and, on the contrary, it is averred that the purpose of the stipulation and Order approving the same was for the purposes of clarifying the record at the State Court level so as to remove the stay imposed on the foreclosure sale by the State Court.

By way of background and further answer, Citizens & Northern Bank had scheduled a Sheriff's Sale for June 6, 1985, at 9:00 a.m. On June 3, 1985, the Movant, Donald J. Trevino, by and through his attorneys at the time, Michael E. Groulx, Esquire, of the law firm of Campana, Groulx and Rudinski, filed a petition with the State Court and received an exparte order staying the foreclosure proceedings "pending the determination and outcome of Williams Knecht's application to reopen the bankruptcy." Upon information and belief, it is averred that Mr. Groulx had represented to the State Court that the automatic stay provisions would be in place if the petition was granted and has asserted that the Trustee may desire to readminister the assets which were the subject of the foreclosure sale. On June 7, 1985, the said William L. Knecht entered into a stipulation agreement with Citizens & Northern Bank in which said Trustee agreed that the estate had no interest in the above described real property; that the Trustee had no intention to review or administer the subject property, and that the sole purpose of reopening the estate was for the purposes of investigating the merits of a cause of action filed by the said Debtor against Citizens & Northern Bank. On June 11, 1985, pursuant to the motion of record, Citizens & Northern Bank submitted the said stipulation to your Honorable Court for your approval.

10. Admitted in part and denied in part. It is admitted that on June 12, 1985, your Honorable Court entered an Order, approving the stipulation between the parties and relieving Citizens & Northern Bank from all stays, automatic or otherwise, and al-

lowing them to proceed with their respective nonbankruptcy law rights; but it is denied that this Court specifically gave permission to Citizens & Northern Bank to foreclosure on the mortgage and enforce their liens against Movant's residence.

11. Admitted.

12. Denied. It is specifically denied that the record is clear that the Movant was given no notice of said motion requsting relief from the automatic stay; and, on the contrary, it is averred that the motion filed with your Honorable Court on June 11, 1985, was not a Motion for Relief From Automatic Stay for the reason set forth herein in paragraph 10 of Respondent's Answer.

By way of further answer, it is averred that on June 13, 1985, Owlett & Lewis, P.C., gave the Movant, Donald J. Trevino, notice of the Stipulation, the Order, and Motion to Approve the Stipulation by sending a copy fo the same by first class mail to his attorneys at the time, Campana, Groulx, and Rudinski, of Williamsport, Pennsylvania. By way of further answer, the docket in this matter shows that there was no appeal entered by the Movant of the Bankruptcy Order approving the Stipulation.

In addition, to remove the stay on the foreclosure imposed by the State Court, on June 11, 1986, Owlett & Lewis, P.C., filed a petition with the State Court requesting the removal of the stay and an order was entered releasing the stay. A copy of said order was served by the Tioga County Court Administrator on Mr. Trevino's attorneys at the time, John Campana, Esquire, of Campana, Groulx and Rudinski. Furthermore, the law firm of Owlett & Lewis, P.C., sent copies of said pleadings and orders to said attorneys. The docket at the State level shows that there was no appeal entered by the Movant of the order.

13. Denied. It is specifically denied that the order granting relief from the automatic stay provisions was obtained in clear violation of the notice requirements of 11 U.S.C. Section 362; and, on the contrary, it is denied for the reasons set forth in Respondent's Answer as set forth in paragraphs 10 and 12 hereinabove.

The answer also sets forth two affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE WAIVER

1. On August 24, 1983, the Debtor, Donald J. Trevino, filed a petition under Chapter 11 of the United States Bankruptcy Code. Said case was eventually converted by your Honorable Court to a proceeding under Chapter 7 and subsequently closed on May 1, 1985.

2. Approximately one year after the estate was closed, the former Trustee, William Knecht, Esquire, petitioned your Honorable Court to reopen the estate for the sole purposes of reviewing a suit filed by the Debtor against Citizens & Northern Bank. Said suit was summarily dismissed by Justice Wallot of the Lycoming Court Court of Common Pleas and is presently on appeal by the Debtor to the Superior Court of Pennsylvania.

3. At the time that the estate was reopened, Citizens & Northern Bank, the Movant herein, had tentatively scheduled a Sheriff's Sale of the Debtor's real property, said sale being stayed upon petition of the Debtor, by the Tioga County Court of Common Pleas, pending the "determination and outcome of the Trustee's application to reopen the bankruptcy."

4. Subsequent to the stay of the foreclosure sale, Citizens & Northern and the Trustee, William Knecht, Esquire, entered in to a stipulation, which was submitted to your Court for approval, whereby the Trustee stated that his sole purpose in reopening the case was to investigate the merits of the above described cause of action and the Trustee stated that he did not have any intention to review or administer the real property which was the subject of the Sheriff's Sale.

5. On June 12, 1985, your Honorable court entered an order which approved the said stipulation and also released Citizens & Northern Bank from all stays, automatic or otherwise. A copy of said stipulation,

the motion for approval, and the said Order by this Court were served by first class mail upon the Debtor's attorneys at the time, Campana, Groulx and Rudinski, Joseph Campana, Esquire. A copy of said letter is attached hereto as Exhibit "A".

6. Upon the entry of the order by your Honorable Court, upon motion of Owlett & Lewis, P.C., president Judge Robert M. Kemp, of the Court of Common Pleas of Tioga County, terminated the Order staying the foreclosure proceeding. The Court Administrator duly served copies of said order upon William Knecht, Esquire, and Michael Groulx, Esquire, of Campana, Groulx and Rudinski, attorneys for Donald J. Trevino. In addition, the law firm of Owlett & Lewis, P.C., served copies of the petitions and orders filed in the Tioga County Court of Common Pleas proceeding upon the Debtor's attorney, Campana, Groulx and Rudinski. A copy of said correspondence is attached hereto as Exhibit "B".

7. On March 12, 1987, approximately twenty-one (21) months after the entry of the order of June 12, 1985 removing any stays imposed upon the Sheriff's Sale by the Court of Common Pleas, the Debtor, by and through his new attorney, Mary A. Osgood, filed the Motion to Vacate Order of 6/12/85 Terminating Automatic Stay and to Set Aside Foreclosure and Sheriff's Sale.

8. The Debtor failed to preserve the issues set forth in said motion as there were no appeals of the above said orders docketed in the Court of Common Pleas of Tioga County and/or the Bankruptcy Court of the Middle District of Pennsylvania.

9. The Debtor-Movant has waived his rights to raise the issues set forth in said motion.

### SECOND AFFIRMATIVE DEFENSE
### ESTOPPEL/LACHES

1. Paragraphs 1 through 6 of the averments set forth in Respondent's Answer in the section titled "First Affirmative Defense" are incorporated herein by reference and made a part hereof as though fully set forth herein.

2. On June 12, 1985, Sheriff's Sale of the subject property occurred and at which time Citizens and Northern Bank purchased the subject real property.

3. On July 29, 1985, upon petition of Donald J. Trevino, a rule was entered in the Court of Common Pleas of Tioga County on Citizens & Northern Bank to show cause why the Sheriff's Sale should not be set aside.

4. On August 19, 1985, a hearing was held on said petition and on August 23, 1985, an order was entered by President Judge Robert M. Kemp dismissing the petition of Donald J. Trevino to set aside the Sheriff's Sale.

5. The Movant, Donald J. Trevino, did not appeal said order nor did Donald J. Trevino undertake any legal action in Bankruptcy Court or State Court to overturn said sale until March of 1987, approximately nineteen (19) months after the entry of said order dismissing the petition to set aside sale.

6. During the nineteen (19) month period preceding the motion herein, Citizens & Northern Bank has made improvements to said property and is presently in the process of consummating a sale of said property.

7. Citizens & Northern Bank has relied upon the Debtor-Movant's failure to file appeals herein and failure to file said motion within the preceeding nineteen (19) month period.

8. The delay in raising the issues set forth in said motion is unreasonable and unexplainable given the period of time since the Sheriff's Sale.

To complete the factual record, one additional event should be included, namely, the docket entries of Tioga County pertaining to the foreclosure action of Citizens & Northern Bank against the debtor should be set forth and are as follows:

Complaint in Mortgage Foreclosure by Citizens & Northern Bank against Donald J. Trevino (debtor herein) and Lorraine L. Trevino, was filed on March 25, 1985.

Service of Complaints occurred on March 28, 1985 and April 2, 1985, respectively. Default Judgment entered on April 19, 1985 against Donald J. Trevino (debtor) and on April 24, 1985 against Lorraine L. Trevino.

Sheriff's Sale held on June 12, 1985.

Deed conveying subject property was recorded on June 25, 1985 in Tioga County Deed Book 438 at page 100.

Debtor argues that there are five issues to be decided and they are as follows:

1. Whether the Automatic Stay provision of 11 U.S.C. § 362 was in effect following the reopening of Movant-Debtor's Chapter 7 case.

2. Whether Citizens and Northern Bank's failure to give notice to Movant-Debtor of the motion of June 11, 1985, violated the provisions of 11 U.S.C. § 362.

3. Whether this Court's order of 6/12/85 terminating the Automatic Stay, and the subsequent foreclosure and Sheriff's Sale of Movant-Debtor's exempt residence are void and should be set aside.

4. Whether this Court's order of 6/12/85 granting relief from the Automatic Stay provisions of 11 U.S.C. § 362 without notice to the Movant-Debtor impaired the Movant-Debtor's exemptions under 11 U.S.C. § 522.

5. Whether laches is now a bar to Movant-Debtor's above captioned Motion to Vacate the order of 6/12/85 and to set aside the foreclosure and Sheriff's Sale.

**1. Whether the automatic stay provisions of 11 U.S.C. § 362 was in effect following the reopening of the Movant-Debtor's Chapter 7 case.**

Five issues have been set forth in Movant's Motion to Vacate the Order of 6/12/85 Terminating the Automatic Stay and to Set Aside the Foreclosure and the Sheriff's Sale. Four of the issues raised by movant concerning § 362 (automatic stay) are combined. The first issue is whether the automatic stay was in effect due to the reopening of Movant/Debtor's Chapter 7 case. Other issues involve the sufficiency of notice given to movant of the June 11, 1985, motion for relief from the automatic stay; the validity of the Bankruptcy Court's 6/12/85 order terminating the stay; and whether granting relief from the automatic stay without notice to Movant impaired movant's exemptions under § 522. Additionally, respondents' answer sets forth waiver and estoppel/laches as affirmative defenses. However, after reviewing the pertinent case law we find that a resolution of the first issue eliminates any further need to discuss the above mentioned affirmative defense or any other issues presented in the Movant's motion to vacate the automatic stay and set aside the foreclosure and Sheriff's Sale.

Debtor argues that upon the reopening of its bankruptcy case on May 24, 1985 the protections of § 362 were automatically reinstated. He further states that there is no case law or commentary on this point. A careful review of § 362 and applicable case law indicates that the automatic stay was not in force at the time that respondent's foreclosure sale took place.

The automatic stay is one of the fundamental protections afforded a debtor by current bankruptcy law. The legislative history points out that "it gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures which drove him into bankruptcy." It also provides creditors with protection. Without it, certain creditors would be able to proceed with their own remedies against debtor's property and those who acted first would obtain payment of their claims in preference to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure in which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that. (H.Rep. 95–595), U.S.Code Cong. & Admin.News (1978), p. 5787. This section points out that the stay comes into effect upon the filing of a proceeding. It enumerates actions enjoined and stayed once the petition is filed. It lists exceptions and outlines methods in which the stay may be

terminated by the court upon request of a party in interest. For the most part it deals with ways in which relief from the stay is obtainable.

Subsection (c) of § 362 governs automatic termination of the stay. It provides as follows:

§ 362(c) Except as provided in subsections (d), (e), (f) of this section—

(1) The stay of an act against the property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this title concerning and individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

While neither side has referred us to a case directly on point, concerning whether a reopening in a closed Chapter 7 case operates to reinstate the automatic stay, there are cases dealing with § 362(c) indicating the finality of the act of closing a case or the entry of a discharge. *In re M.L. Barge Pool, VII Partners Series A,* 71 B.R. 161 (Bankr.E.D.Mo.1987); *Matter of Terramar Mining Corporation,* 70 B.R. 875 (Bankr.M.D.Fla.1987). The language of § 362(c) is clear and unambiguous and represents a simplification of the language in the rules. *Colliers on Bankruptcy,* ¶ 326.06, p. 362–51 (15th ed. Vol. 2). In the case of an act against property of the estate, the stay continues until the property is no longer property of the estate. 11 U.S.C. § 362(c)(1). This may occur by reason of sale or abandonment or for some other reasons such as its being determined to be exempt. The plain language of § 362(c)(2) indicates that the automatic stay remains in effect only until the time the case is closed, dismissed, or until a discharge is granted or denied. *Matter of Solar Equipment Corp.,* 19 B.R. 1010 (Bankr.W.D.Lo.1982). Quite simply, once a

case is closed, dismissed, or a discharge is granted or denied, the court lacks jurisdiction to continue the provisions of § 362 of the Bankruptcy Code. *Id., Collier on Bankruptcy,* ¶ 326.06 at 362–43, 44; *In re River Hills Apartment Fund,* 91,033 ¶ 71,752, CCH 1987. Moreover, there is no statutory provision in which Congress has authorized a Bankruptcy Court once it has terminated the automatic stay pursuant to § 362(c)(2) to continue imposition of the automatic stay. *Matter of Solar Equipment Corp., supra.* Thus, the argument that equity will allow the bankruptcy court to continue the automatic stay after it has been terminated is not effective because:

"A bankruptcy court possesses only the jurisdiction and powers expressly or by necessary implication conferred by Congress.... Although a bankruptcy court is essentially a court of equity, ... its broad equitable powers may only be exercised in a manner which is consistent with the provisions of the Code."

*Johnson v. First National Bank of Montevideo,* 719 F.2d 270, 273 (8th Cir.1983). (other citations omitted).

Section 362(c) is applicable to § 362(a)(5) which concerns debtor's property. Section 362(c)(2) mentions "Any act under § 362(a)" of which Section 362(a)(5) is a part. Consequently, property which has been claimed as exempt or which has been abandoned will then be property of the debtor, protected by the stay of § 362(a)(5) until that stay expires under § 362(c)(2) or is terminated under §§ (d), (e), or (f). See *In re Harrell,* 57 B.R. 88 (Bankr.D.S.C. 1985); *Kretzer v. D.F.W. Federal Credit Union,* 48 B.R. 585 (Bankr.D.Nev.1985). In this instance the automatic stay was terminated on August 16, 1984, when a final discharge was entered in this matter pursuant to 11 U.S.C. § 362(c)(2)(C).

Notwithstanding the foregoing discussion, debtor contends that the automatic stay was reinstated by allegations and pleadings in this Court and the Court of Common Pleas of Tioga County by the Trustee and by Citizens & Northern Bank which indicated that the reopening of the bankruptcy case reinstated the automatic

stay. Debtor would have us ignore the statement by the Trustee that the reopening in no way was related to the administration of real estate involved in the foreclosure. Furthermore, he would have us ignore the argument of Citizens & Northern Bank that notwithstanding the allegations mentioned above the automatic stay was not reinstated. More importantly, debtor asks that we disregard the above mentioned statutory authority and case law which clearly implies that upon the reopening of the present case, the automatic stay was not reinstated. Because we find that the automatic stay was not reinstated upon the reopening of the present case, we need not determine whether an alleged deficiency in the notice of a hearing for relief from the automatic stay or an alleged deficiency in the order resulting from said hearing violated the provisions of § 362. Additionally, we need not determine whether laches is a bar to movant's motion to vacate the order of 6/12/85 terminating the automatic stay and to set aside foreclosure and Sheriff's Sale. Thus, because the automatic stay was not in effect upon the reopening of the present case, a judgment vacating the Court's Order of 6/12/85 as requested by movant would have no effect in the present case.

### 3. Motion to Avoid Liens Impairing Debtor's Exemptions

The issue before the Court on motion is whether the Court will entertain a § 522 lien avoidance complaint filed approximately twenty-one (21) months after the case was reopened and approximately thirty-one (31) months following discharge. Although, we can dispose of this issue simply by discussing the effect of a Sheriff's Sale in Pennsylvania, we feel that a discussion of the laches problem is warranted.

The debtor's right to avoid liens is permissive rather than automatic. However, neither the Code nor the Rules have established a time limit for the filing of a § 522(f) complaint. Some courts have held that the failure of the Code and the Rules to establish a filing deadline permits the debtor to file a § 522(f) complaint at any time subsequent to his discharge. *In re*

*Butler,* 5 B.R. 360, 363 (Bankr.D.Md.1980); *In re Bennett,* 13 B.R. 643, 645 (Bankr.W. D.Mich.1981). However, these cases have generally denied § 522 complaints if certain factors exist; such as a failure to act promptly by the debtor, reliance by a creditor and good faith actions by a creditor. *In re Towns,* 16 B.R. 949 (Bankr.N.D.Iowa 1983).

■ Other courts have held that a debtor may not file a complaint to avoid liens pursuant to § 522(f) after he has obtained a discharge. *In re Adkins,* 7 B.R. 325, 327 (Bankr.S.D.Cal.1980); *In re Krahn,* 10 B.R. 770 (Bankr.E.D.Wis.1981). The courts which have refused to allow a § 522(f) complaint after obtaining a discharge have stressed the need for finality in bankruptcy proceedings, *In re Townes, supra; In re Adkins, supra.* Although the discharge date is a rationale deadline for the filing of a § 522(f) complaint, no rule has ever been promulgated establishing it as such, *In re Towns, supra.* Consequently, this court will not adopt the conclusions of those courts which have found that a debtor may never file a § 522(f) complaint subsequent to his discharge, but chooses to apply the three factor analysis advanced in *In re Towns, supra.*

To deny relief to the debtor the record must show "(1) a failure by the debtor to act promptly in asserting his rights under § 522(f) without good cause therefor; (2) reliance by the creditor on the debtor's failure to assert his rights and an assertion by the creditor of his rights against the property based on such reliance; and (3) a creditor who is acting, and has acted in good faith." *In re Towns, supra,* 16 B.R. at 955; *Glass Manor Apartments Limited Partnership v. Corporation De Jevua,* 34 B.R. 845 (Bankr.M.Md.1983).

In this instance it has been approximately twenty-one (21) months since the reopening of the case and approximately thirty-one (31) months since discharge was entered in this case. The debtor has failed to set forth a reason for his failure to file his § 522(f) motion in a timely fashion. Consequently, the first element of the test has

been satisfied, i.e., failure by the debtor to act promptly.

Secondly, respondent has relied upon debtor's inaction. In this instance, debtor/movant's claimed exemptions were allowed. Respondent then sought and obtained relief from the automatic stay. However, debtor had not sought to avoid the liens on his exemptions. The creditor/Bank then foreclosed on the property at issue and it was sold at a Sheriff's Sale. The debtor contested the mortgage foreclosure proceeding in the state courts, but as indicated in respondent's brief the courts have sustained the Sheriff's Sale. The respondents have also stated that they incurred expenses in proving and maintaining the premises at issue during the two years preceding debtor's motion. Furthermore, respondents have incurred legal expenses defending its claim to the property at issue.

■ Lastly, we find that the respondent acted in good faith. There have been no allegations that the respondent acted in bad faith. There existed no impediment to the respondent's foreclosure at the time it sought such relief. During respondent's foreclosure proceedings, debtor argued that the foreclosure could not go forward because of the automatic stay, but never attempted to avoid any liens. Thus, the remaining elements of the test advanced in *In re Towns, supra,* have been established and we must deny debtor's request for a § 522(f) proceeding. Although laches is apparently a bar to the debtor's § 522(f) proceeding, we need not decide the present case on that issue although we have discussed it in depth. In this case, a valid Sheriff's Sale was held and was never set aside. Consequently, the debtor's current motion to avoid judicial liens is moot because the liens at issue do not impair any of debtor's exemptions since there are no exemptions remaining as a result of the Sheriff's Sale.[1] *Matter of Russell,* 8 B.R. 342 (Bankr.W.D.Pa.1980).

1. A purchaser at a judicial sale acquires an equitable interest which becomes a complete title upon complying with the terms of the sale. *Matter of Russell, supra.* Thus, upon compli-

### 4. Motion to Disqualify Owlett & Lewis

■ The issue before the Court on the above mentioned motion is whether the Court will entertain a motion to disqualify a creditor's counsel due to a possible conflict of interest arising out of a relationship with the Movant/Debtor.

Movant's contention is that a possible conflict of interest arose out of creditor's counsel's assistance in the completion and filing of an application for funds from the Tioga County Industrial Development Authority (hereafter TCIDA/IDA).

The analytical framework for evaluation of such possible conflict of interest issues has most recently been set forth in the case of *INA Underwriters Ins. v. Nalibotsky,* 594 F.Supp. 1199 (D.C.Pa.1984). A decision which fully restates the opinion adopted by the Third Circuit in the case of *In re American Roller Co. v. Budinger,* 513 F.2d 982 (3rd Cir.1975). The threshold requirement for actions such as presented in this movant's motion is that the subject matter of the pending suit in which the attorney represents an interest adverse to a prior employer is such that during the course of the former representation the attorney "might have acquired substantially related matter." *Richardson v. Hamilton Corp.,* 469 F.2d 1382, at 1385 (3rd Cir.1972); *T.C. Theaters Corp. v. Warner Bro. Picture, Inc.,* 113 F.Supp. 265 (S.D.N.Y.1953).

This analysis requires that there in fact existed a prior attorney-client relationship between the moving party and counsel to which it objects. This seems to be agreed upon by the parties. Nevertheless, movant fails in the alternative to establish or meet his burden of proof regarding a possible conflict of interest.

The relationship of the previously provided information to the present litigation is the essential determination to be rendered. The burden of proving such a relationship falls upon the moving party. *E.G., Na-*

ance with the terms of the Sheriff's Sale the property subject to the sale vests in the purchaser and the debtor forfeits his interests in said property thereby losing his exemptions.

**40**

tional Souvenir Center v. Historic Figures, Inc., 728 F.2d 503, 517–18 (D.C.Cir. 1984); Duncan v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 646 F.2d 1020, 1028 (5th Cir.1981); Government of India v. Cook Industries, Inc., 569 F.2d 737, 739 (2d Cir.1978); Richardson v. Hamilton International Corp., 469 F.2d 1382, 1385 (3d Cir.1972); Stanwood Corp. v. Barnum, 575 F.Supp. 1250, 1251 (W.D.N.C.1983); City Consumer Services, Inc. v. Horne, 571 F.Supp. 965, 970 (C.D.Utah 1983); Brotherhood Railway Carmen of the United States and Canadav. Delpro Co., 549 F.Supp. 780, 782, 787 (D.Del.1982); Zions First National Bank, N.A. v. United Health Clubs, Inc., 505 F.Supp. 138, 139–40 (E.D.Pa.1981).

Movant has failed to carry forth its burden of establishing the "substantial relationship" between the information provided in the completion of his TCIDA/IDA application for funds to expand his business operations and this present litigation which concerns his residential property. Thus, from the record provided it cannot be stated that the essential element of the test stated in the cited authority, i.e., "The confidential information must be of the type which one would expect to be related to the issues in the present litigation" has been met. The record is void, other than a broad general statement provided by the movant in its brief as to the nature of or the relationship of the information provided for his TCIDA/IDA application and this action regarding his residential property.

Having reached the above conclusion and after an evaluation of the motion to disqualify on its merits, we need not address in detail, the issues of waiver and laches. It is, however, appropriate to state the standards regarding these issues.

"Such a finding is justified either when a former client expressly agrees to the attorney's representation of an adversary ... or when a former client was concededly aware of the former attorney's representation of an adversary but failed to raise an objection promptly when he had the opportunity. In the latter circumstance, the person whose confidences and secrets are potentially at risk of disclosure or misuse is held to have waived his right to protection from that risk." INA Underwriters Ins. v. Nalibotsky, supra.

■ Neither party asserts that the movant expressly agreed to the attorney's representation of an adversary. The record, however, is supportive of a conclusion that the movant waived his objection due to his failure to promptly raise the objection. Movant was aware of the involvement and the relationship between creditor and its counsel, to whom this motion is directed. The creditor, represented in each incidence by the same counsel, has been a party to numerous previous legal proceedings brought by the movant. The movant has during the same period been represented by several different legal counsel, but neither the movant nor his counsel during these numerous prior proceedings raised this issue. Movant had both in the number of adversarial proceedings and with the involvement of different counsel sufficient opportunity to raise this objection, but failed to do so. Movant, therefore, should be barred from doing so for failure to raise such an objection promptly when the opportunity availed itself.

"It is generally established that laches is not a bar to a motion to disqualify since a court's supervision of the ethical conduct of attorneys practicing before it is designed to protect the public interest and not merely the interest of the particular moving party. E.g., Emle Industries, Inc. v. Glen Raven Mills, Inc., 478 F.2d 562, 574 (2d Cir.1973); Government of India v. Cook Industries, Inc., 422 F.Supp. 1057 (S.D.N.Y.1976); Koehring Company v. Mantiowoc Company, 418 F.Supp. 1133 (E.D.Wis.1976); Empire Linotype School, Inc. v. United States, 143 F.Supp. 627 (S.D.N.Y.1956). However, some courts have found delay in the filing of a motion to disqualify to be relevant to the resolution of such a motion. In particular, delay may bar the presentation of a motion to disqualify if that delay reflects an attempt by the moving party to use the disqualification issue merely to gan a tactical advantage.

E.g., *Arkansas v. Dean Food Products Company,* 605 F.2d 380 (8th Cir.1979); *Redd v. Shell Oil Company,* 518 F.2d 311 (10th .Cir.1975); *United States v. Newman,* 534 F.Supp. 1113 (S.D.N.Y. 1982). In addition, it has been suggested that potential prejudice to other parties to the litigation, particularly the party whose counsel may be disqualified, may be considered in the disqualification analysis. E.g., *Arkansas v. Dean Food Products Company,* 605 F.2d 380 (8th Cir.1979); *Kramer v. Scientific Control Corporation,* 534 F.2d 1085 (3d Cir. 1976). (*INA Underwriters Ins. v. Nalibotsky, supra* ).

The last element, the potential prejudice of the party whose counsel is disqualified must be addressed. Movant's contentions in this regard have been related to matters concerning his residence and not those which related to his business activities. Since the issue raised in these proceedings deals with movant's residence, it would not in this Court's opinion, be reasonable to cause the creditor to incur additional expense and time delay, which would result from the disqualification of its present counsel. Movant, having failed to sustain its burden of proof in establishing the essential element of the "substantial relationship" test, must also have its actions measured by the potential prejudice to the other party, if disqualification of counsel is granted.

We, therefore, find that the movant has failed to clearly establish .the necessary elements to warrant granting of the motion to disqualify creditor's counsel due to a conflict of interest and the granting of such a motion would result in undue prejudice to the party whose counsel would be disqualified.

In view of the foregoing, all four (4) motions of the debtor are hereby DENIED.