# 2002 DTA 108

**TRIBUNAL DEL CIRCUITO DE APELACIONES
CIRCUITO REGIONAL I DE SAN JUAN, PANEL IV**

COMPAÑIA FRANCO PANAMEÑA DE INVERSIONES, SA
Demandante-Apelante

v.

EHG ENTERPRISES, INC., ETC.
Demandados-Apelados

Núm. KLCE-01-01087

San Juan, Puerto Rico, a 13 de junio de 2002

Panel integrado por su Presidente, el Juez Gierbolini,
y los Jueces Cordero y Rodríguez Muñiz

Gilberto Gierbolini, Juez Ponente

**TEXTO COMPLETO DE LA RESOLUCION**

La Compañía Franco Panameña de Inversiones (en adelante, CFPI) nos solicita la revisión de la Resolución emitida el 20 de agosto de 2001 por el Tribunal de Primera Instancia, Sala Superior de San Juan, el cual ordenó la paralización de los procedimientos para la ejecución de la sentencia en el caso KCD-1990-0709. A continuación exponemos los hechos más pertinentes a la controversia que nos ocupa.

**I**

En el año 1974, CFPI presentó demanda en cobro de dinero contra E.H.G. Enterprises, Parque San Patricio, Inc., Enrique H. Gutiérrez, Ariel Gutiérrez y las respectivas Sociedades de Bienes Gananciales de éstos. La reclamación tenía como base ciertos pagarés suscritos por los demandados a favor de CFPI los cuales alegadamente ascendían a $400,000.00, incluyendo intereses y honorarios de abogado. Una vez comenzado el pleito, el 18 de diciembre de 1975, las partes firmaron documentos denominados *"Acuerdo de Transacción"* y *"Dación en Pago"* mediante los cuales los demandados, en pago de su deuda, le dieron a CFPI determinado bien inmueble localizado en el Municipio de Fajardo. Dichos convenios fueron acogidos por el tribunal mediante Sentencia por Estipulación emitida el 14 de mayo de 1976.

Durante el año 1978, las compañías demandadas (E.H.G. Enterprises y Parque San Patricio, Inc.) presentaron petición de quiebra bajo las disposiciones del Capítulo 11 del Código de Quiebras Federal. Ambos casos, 78-90 y 78-95, fueron convertidos a casos de liquidación (Capítulo 7) y, finalmente, fueron cerrados al final de la década de los 80. █

Por otra parte, el 14 de mayo de 1980, el Estado Libre Asociado de Puerto Rico presentó una demanda de expropiación forzosa contra CFPI con el fin de obtener la titularidad del solar el cual había sido objeto del acuerdo transaccional suscrito por esta última y los demandados, Ariel y Enrique Gutiérrez (en adelante, los Hermanos Gutiérrez). Este caso culminó con la Sentencia emitida el 16 de mayo de 1984 cuyo efecto en particular fue concederle al ELA la titularidad definitiva del inmueble.

A su vez, el 8 de julio de 1981, los hermanos Gutiérrez, mediante solicitudes por separado (81-00420 y 81-00466), también acogieron el procedimiento de quiebra bajo el Capítulo 7 del referido Código. El Tribunal de Quiebras para el Distrito de Puerto Rico liberó a los hermanos Gutiérrez de sus deudas el 21 de mayo de 1985 y cerró ambos casos en el año 1990.

En vista de los acontecimientos antes relatados, CFPI presentó demanda enmendada (KCD-1990-0709) contra los recurridos para solicitar la nulidad de los acuerdos y negocios jurídicos incluidos tanto en el *"Acuerdo de Transacción"* como en la *"Dación en Pago"* del 18 de diciembre de 1975. Reclamó, además, la cantidad de $400,000.00, más intereses, costas y honorarios de abogado en concepto de los pagarés los cuales habían sido objeto de la reclamación original de 1974. El 10 de abril de 1992, el Tribunal emitió Sentencia Parcial en rebeldía anulando los referidos acuerdos y reviviendo la demanda en cobro de dinero. No obstante, dicha sentencia fue dejada sin efecto el 22 de junio de 1993. Consecuentemente, CFPI apeló este último dictamen ante el Tribunal Supremo (CE-93-333).

Mientras el recurso antes apuntado estaba pendiente para su consideración, los hermanos Gutiérrez fueron objeto de una petición de quiebra involuntaria en su contra el 7 de abril de 1995. █ El Tribunal de Quiebras Federal notificó la desestimación de dicha quiebra involuntaria el 25 de julio de 1997. Por otra parte, el 19 de junio de 1996, el Tribunal Supremo revocó la sentencia del 22 de junio de 1993, al resolver que el Tribunal de Primera Instancia erró en la aplicación de la doctrina de cosa juzgada y, por lo tanto, ordenó la devolución del caso a dicho tribunal para la continuación de los procedimientos.

El 27 de enero de 1998, una vez desestimada la petición de quiebra involuntaria, el Tribunal Supremo

emitió Sentencia Enmendada confirmando la validez de la sentencia emitida el 10 de abril de 1992, reactivando así la sentencia por cobro de dinero. Así las cosas, el 5 de abril de 2001, CFPI presentó una moción solicitando la ejecución de la sentencia en el Caso Número KCD-1990-0709 antes esbozado. Días más tarde, el 20 de abril de 2001, el Tribunal de Quiebras Federal ordenó la reapertura de las quiebras Número 81-00420 y 81-00466 para incluir a CFPI en el listado de acreedores. El 17 de agosto de 2001, los demandados replicaron a la solicitud de ejecución de sentencia argumentando que, debido a la reapertura de las quiebras de 1981, procedía la paralización automática de la ejecución y que, por lo tanto, el tribunal recurrido carecía de jurisdicción para atender el asunto.

Finalmente, el 20 de agosto de 2001, el Tribunal de Primera Instancia, Sala Superior de San Juan, ordenó la paralización de la ejecución de la Sentencia. De esta resolución, recurre ante nos la peticionaria quien sostiene que, en virtud de la Sección 362 (c) del Código de Quiebras Federal, dicha paralización era improcedente. Argumenta que, en el caso de la quiebra, estaban presentes las circunstancias preceptuadas en la referida sección la cual establece límites de tiempo en torno a la vigencia de la paralización automática. La peticionaria afirma, además, que existe Sentencia final, firme e inapelable del Tribunal Supremo de Puerto Rico (CE 93-333) la cual confirma la vigencia de la deuda contraída entre los recurridos y CFPI. Por otro lado, sostiene que la orden del Tribunal de Quiebras fue emitida a los únicos efectos de incluir a CFPI como acreedor y que el asunto de la liberación de la deuda *"pudo y debió plantearse durante al pendencia del caso, a modo de defensa afirmativa."*

Por su parte, los recurridos arguyen que, de prevalecer la reclamación presentada por ellos ante el Tribunal de Quiebras, cualquier ejecución que realice cualquier entidad o persona para dar efecto a la Sentencia (caso Número KCD-1990-0709) sería nula. La razón para ello es, según los recurridos, que este Tribunal no tiene jurisdicción sobre el caso, ya que le corresponde al Tribunal de Quiebras determinar, en primer lugar, el asunto de la liberación (*"discharge"*) de la deuda.

A continuación, exponemos el derecho aplicable a la controversia que nos ocupa.

## II

La presentación de una solicitud de quiebra ante el Tribunal de Quiebras de los Estados Unidos tiene el efecto de crear un *"estate"* o caudal, y la paralización automática de todo procedimiento o actuación contra la persona o entidad que presenta la solicitud. La Sección 541 del Código de Quiebras, 11 U.S.C. Section 541, especifica los bienes del deudor que constituyen parte del *"estate"*. Por su parte, la Sección 362 (a) del Código de Quiebras, 11 U.S.C. Section 362 (a), establece la paralización automática (*"automatic stay"*) de los procedimientos o actuaciones en contra de una persona o entidad que haya presentado una solicitud de quiebra ante el Tribunal de Quiebras, 3 Collier on Bankruptcy Section 362.01, at 362-11 (Lawrence P. King ed., 15th ed. 2001). Véase, también, nota al calce número 5 en *Morales Pérez v. Clínica Femenina de P.R.,* 135 D.P.R. 810 (1994). Entre los procedimientos que deberán ser paralizados, el estatuto, 11 U.S.C. Section 362 (a), enumera los siguientes:

*"(1) The commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;*

*(2) The enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;*

*(3) Any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate; ...".*

En otras palabras, esta paralización automática tiene un efecto inmediato, y es aplicable, entre otras cosas, a cualquier entidad que inicie o continúe cualquier acción civil contra el deudor, o solicite la ejecución de una sentencia contra el deudor.

Para que esta paralización surta efecto, no es requerida notificación alguna al respecto. La mera presentación de la solicitud de quiebra es suficiente para ello. "*Tan pronto esto ocurre, en lo que atañe a los tribunales estatales, éstos pierden toda jurisdicción. Ese es precisamente el sentido de la calidad de automática que caracteriza a esta paralización,*" *La Paralización Automática de la Ley de Quiebras,* Instituto de Estudios Judiciales, Administración de los Tribunales, a la página 11 (1993). La norma general es que cualquier procedimiento realizado en violación a la paralización será considerado nulo, o al menos, anulable, 3 Collier on Bankruptcy Section 362.02, página 362-12. ■ Sobre el propósito de dicha paralización, han dispuesto lo siguiente:

"*The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.*"

Véase, Comentarios Históricos y Estatutarios en 11 U.S.C.A. Section 362 a la página 61.

A tenor con lo antes expuesto, el inciso (c) de la misma sección dispone ■ que la paralización sigue vigente, con respecto a actos en contra de la propiedad que forma parte del caudal, hasta que la propiedad deje de formar parte del caudal. En cuanto a cualquier otra acción paralizada por la Sección 362, la paralización continúa en efecto hasta que el caso de quiebra sea desestimado o cerrado, o hasta que la liberación ("*discharge*") sea concedida o denegada. Véase, *La Paralización Automática de la Ley de Quiebras, supra,* a las páginas 14-15.

Por otra parte, la Sección 350 del Código de Quiebras, 11 U.S.C. Section 350, establece que un caso puede ser reabierto en el tribunal en el cual dicho caso fue cerrado a los fines de administrar bienes, para otorgar algún remedio al deudor o por otra causa, (traducción nuestra). En cuanto a la determinación de lo que constituye "*otra causa*" para efectos de la reapertura del caso, los tribunales federales han reiterado que la misma es discrecional del tribunal y debe ser otorgada dependiendo de los hechos particulares de cada caso. Véase, 9B Am. Jur. 2d Section 3220; *Wragg v. Federal Land Bank,* 317 U.S. 325 (1943); *Heywood-Wakefield Co. v. Small,* 96 F.2d 496 (1938); *In re: Endlich,* 47 B.R. 802 (Bkrtcy.E.D.N.Y.1985); *In re: McDonald,* 161 B.R. 697 (D.Kan.1993); *In re: Smith,* 125 B.R. 630 (Bkrtcy.E.D.Okl.1991); *Matter of Gratrix,* 72 B.R. 163 (D.Alaska 1984).

Dicho esto, queda entonces la interrogante de cuál es el efecto de la reapertura de un caso sobre los procedimientos estatales relacionados al mismo. En otras palabras, si queda activada la paralización provista en la Sección 362 (a), o prevalece la Sección 362 (c) la cual establece el momento en que termina la paralización.

Esta controversia ha sido atendida en varias ocasiones por Tribunales de Quiebras Federales, los cuales han concluido que la reapertura de un caso, en virtud de la Sección 350 del título 11 U.S.C., no reinstala la paralización automática de la Sección 362 (a). ■

En *In re: Trevino,* 78 B.R. 29 (Bankr. M.D. Pa. 1987), el Tribunal le concedió la liberación ("*discharge*") al deudor y luego cerró el caso; pero, subsiguientemente, el mismo fue reabierto debido a una moción a tales efectos, por parte del fiduciario asignado al caso. El deudor, a base de las disposiciones de 11 U.S.C. Section 362 (a), solicitó que el dejar sin efecto la ejecución de una propiedad y la correspondiente venta judicial. ■ Sostuvo que, toda vez que la reapertura había ocurrido antes de la venta judicial, procedía la paralización

automática de la misma. El Tribunal de Quiebras no le dio la razón. Dicho foro federal razonó de la siguiente manera: *"el lenguaje claro de la Sección 362 (c) (2) indica que la paralización automática mantiene su vigencia solamente hasta el momento en que el caso es cerrado, desestimado o hasta que es concedida o denegada la liberación (discharge),"* (traducción nuestra), *In re: Trevino, supra*, a la página 37. No existe disposición estatutaria mediante la cual, el Congreso, una vez haya terminado la paralización a tenor con la Sección 362 (c), le permita a un Tribunal de Quiebras seguir imponiendo dicha paralización, *In re: Trevino, supra*, a la página 37.

Por otra parte en *In re: Gruetzmacher*, 145 B.R. 270 (W.D. Wis. 1991), el Tribunal de Quiebras permitió la reapertura del caso para los efectos limitados de considerar la posible ejecución de una estipulación suscrita por las partes la cual formaba parte de un acuerdo en un procedimiento de divorcio. El acreedor, sin embargo, alegó que la reapertura había activado la paralización automática y que, por lo tanto, procedía el dejar sin efecto un embargo a favor del Internal Revenue Service sobre ciertos bienes del deudor. El Tribunal, tomando como base el caso de *Trevino*, dispuso lo siguiente:

*"As asserted in the aforementioned cases, this Court has no authority to reinstate the powerful automatic stay provisions upon reopening. To do so would severely restrict all creditors of the debtor merely on the basis of a dispute involving one of his creditors... The creditor has cited no statutory or judicial authority which would justify such a drastic expansion of the debtor's rights as against other creditors such as the USA-IRS who had no interest whatsoever in the limited matter which necessitated the reopening of the case."*

En el presente caso, están presentes dos de las tres circunstancias provistas en la Sección 362 (c) (2) que, a su vez, establecen el límite de la paralización automática. En otras palabras, el Tribunal de Quiebras concedió a los recurridos, hermanos Gutiérrez, la liberación, Sección 362 (c) (2) (C) de la deuda y, luego, cerró Sección 362 (c) (2) (A), ambos casos. Al acontecer sólo una de estas ocurrencias, el Código de Quiebras dispone para que culmine la paralización automática. En vista del estatuto antes apuntado y de acuerdo a la jurisprudencia esbozada, entendemos que en este caso no opera la paralización automática provista en la Sección 362 (a).

A la luz de dicha conclusión, debemos atender el asunto referente al efecto de la reapertura. En otras palabras, el efecto que tiene la inclusión de CFPI en el listado de acreedores y así determinar cuál foro tiene jurisdicción para atender el asunto de la liberación *"dischargeability"* de la deuda.

Según expresado previamente, la Sección 350 del Código de Quiebras, 11 U.S.C. Section 350, establece que un caso puede ser reabierto en el tribunal en el cual dicho caso fue cerrado a los fines de administrar bienes, para otorgar algún remedio al deudor o por otra causa. Esta determinación es discrecional del Tribunal de Quiebras dependiendo de los hechos particulares en controversia. Específicamente, la presentación de solicitudes de reapertura para añadir a alguna entidad al listado de acreedores es práctica común en dicho tribunal y, aparentemente, dichos pedidos son liberalmente concedidos, *3 Collier on Bankruptcy* Section 350.03 (2), 350-6. Por otra parte, 9 B Am. Jur. 2d. Section 3227, a la página 722, expresa lo siguiente:

*"Although there is some authority to the contrary, it has generally been held that the need for an amendment to a schedule to include an additional creditor and thus accurately reflect all debts owed, constitutes sufficient cause to reopen a case, and that the test to be applied is whether there is harm to the creditor by reason of the reopening."*

Lo antes expuesto, nos conduce a la disyuntiva de tener que determinar lo que ocurre con la deuda reclamada por el acreedor, una vez el Tribunal de Quiebras ha optado por reabrir el caso e incluir a dicho acreedor en los inventarios (*"schedules"*) del caso. La doctrina prevaleciente establece que:

*"Although some decisions may be read as indicating that when a case is reopened and an omitted*

*creditor´s claim is listed by amendment, the discharge automatically and retroactively applies, it is the outcome of the adversary proceeding to determine dischargeability, rather than the amendment of the debtor´s schedules, that will determine the dischargeability of the omitted debt. To declare the debt of a previously unlisted creditor discharged, in conjunction with a motion to reopen, is premature. The reopening of a case is not a panacea for a debtor´s failure to list all creditors; indeed, reopening has been said to be, in large measure, irrelevant to the key issue-that of discharge of the omitted debts. Some courts take the position that the reopening of a case and listing of an additional creditor should always be allowed with the determination of whether there was fraud or intentional design in the original omission of the unlisted or unscheduled creditor being considered only if a determination of dischargeability under 11 USCS Section 523 (a) (3) is sought,"* 9 B Am. Jur. 2d. Section 3227, 723-724.

Por otra parte, el manual de 3 Collier antes apuntado, expresa lo siguiente en la página 350-7:

*"Motions to reopen for the purpose of adding creditors to the schedules are often filed by debtors in the mistaken belief that adding the creditor to the schedules is necessary for the debt to be discharged. In fact, as explained by the Court of Appeals for the Third Circuit in Judd v. Wolfe, the belated scheduling of a creditor after the case has been closed has no effect on whether the debt is discharged. Under section 523 (a) (3), a nonscheduled debt is excepted from the discharge only if the failure to schedule resulted in the creditor not having knowledge of the claim in time to file a proof of claim or, if the creditor holds a claim that would have been found nondischargeable under section 523 (a) (2), (4), or (6), in time to file a dischargeability complaint. If the debt falls within this exception, reopening the case to schedule the debt does not render it dischargeable. If it does not fall within the exception, the debt is discharged regardless of whether it ever was scheduled."*

Como podemos observar, de los principios estatutarios y jurisprudenciales antes esbozados, una vez un caso es reabierto a los fines de añadir a un acreedor al listado para, a su vez, reflejar correctamente las deudas contraídas por el quebrado, procede determinar si la deuda debió ser liberada desde un principio o si la misma cae dentro de alguna de las excepciones a la liberación provistas en 11 U.S.C. Section 523.

Según dicha Sección 523 del Código de Quiebras Federal, la jurisdicción para atender el asunto de la liberación de la deuda va a recaer en el tribunal estatal o en el de quiebras dependiendo del tipo de deuda a considerar. Por ejemplo, la determinación en torno a la liberación de deudas bajo las Secciones 523 (a) (2) (responsabilidad del deudor por la obtención de dinero, crédito, servicios, etc., mediante fraude o apariencias falsas); 523 (a) (4) (apropiación indebida, malversación o fraude mientras se actúa como fiduciario); 523 (a) (6) (daño intencional contra otra entidad o la propiedad de otra entidad); y 523 (a) (15) (ciertas obligaciones relacionadas con la separación y el divorcio), son de la jurisdicción exclusiva del Tribunal de Quiebras, *4 Collier on Bankruptcy* Section 523.03, página 523-17. Por otro lado, la jurisdicción sobre el resto de las excepciones a la liberación enumeradas en la Sección 523 (a) la puede ejercer tanto el Tribunal de Quiebras como el estatal, *4 Collier on Bankruptcy, supra.*

En el presente caso, la controversia gira en torno a determinados pagarés que no fueron incluidos en los inventarios del caso federal debido a que los mismos habían sido objeto de un acuerdo transaccional. Este hecho, el de no haber incluido la deuda en el inventario correspondiente, ubica la determinación de la liberación en este caso bajo la Sección 523 (a) (3) sobre la cual ambos foros, el federal y estatal, tienen jurisdicción. Dicha sección está destinada a proteger el derecho del acreedor a recibir una distribución de dinero mediante la oportuna presentación de su reclamación y para conservar su derecho de perseguir una determinación referente a la liberación de una deuda que está enmarcada dentro de las Secciones 523 (a) (2), (a) (4), (a) (6) y posiblemente (a) (15), *4 Collier on Bankruptcy, supra*, página 523-61. En otras palabras, bajo la Sección 523 (a) (3) (A), la pertinente a este caso, si una deuda no ha sido incluida en la lista a tiempo para que el acreedor pueda, a su vez, presentar su reclamación en un caso en el cual haya habido una distribución de dinero, la deuda no será liberada, *4 Collier on Bankruptcy, supra*, página 523-61. Dicho de otro modo, el deudor quedará

liberado de la deuda si el acreedor fue notificado o, al menos, tuvo el conocimiento constructivo del procedimiento como para lograr presentar su reclamación oportunamente y no lo hizo, 11 U.S.C. Section 523 (a) (3) (A).

Por lo tanto, a tenor con todo lo antes expuesto, resulta forzoso concluir que este tribunal tiene jurisdicción concurrente para atender este asunto junto al Tribunal de Quiebras.

Además, como hemos expresado antes, la reapertura de un caso en virtud de la Sección 350 del título 11 U. S.C., no reinstala la paralización automática de la Sección 362 (a). Aún así, la parte recurrida podrá acudir al Tribunal de Quiebras para que éste tome jurisdicción sobre el asunto y de esta manera pedir afirmativamente la paralización automática de todo procedimiento o actuación contra la persona o entidad que presenta la solicitud por parte del acreedor específico. En otras palabras, determinamos que bajo las circunstancias de este caso es necesario que el Tribunal de Quiebras emita una Orden específica paralizando cualquier actuación del acreedor. Dicha Orden tan sólo paraliza la acción de dicho acreedor.

A la luz de lo antes expuesto, REVOCAMOS la Resolución emitida por el Tribunal de Primera Instancia y ORDENAMOS la continuación de los procesos en dicho tribunal.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

ESCOLIOS 2002 DTA 108

**1.** La Sección 350 del Código de Quiebras, 11 U.S.C. §350, establece que, una vez haya culminado totalmente la administración del caudal (*"estate"*) y el tribunal haya liberado al fiduciario, dicho tribunal debe cerrar el caso. A su vez, las Reglas de Procedimiento de Quiebras proveen un procedimiento específico para llevar a cabo el referido cierre (*"closing"*).

**2.** La existencia de dicho procedimiento no fue informada al Tribunal Supremo, por lo que éste eventualmente le impuso sanciones a la representación legal de los hermanos Gutiérrez.

**3.** Los tribunales han diferido en torno a la nulidad o anulabilidad de las acciones que violan la paralización. Véase, nota al calce número 3 de *3 Colliers on Bankruptcy* Section 362.02, a la página 362-12.

**4.** *"(c) Except as provided in subsections (d), (e), and (f) of this section –*

*(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and*

*(2) the stay of any other act under subsection (a) of this section continues until the earliest of-*

*(A) the time the case is closed;*

*(B) the time the case is dismissed; or*

*(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time the discharge is granted or denied."*

**5.** Véase, *In re: Trevino*, 78 B.R. 29 (Bankr. M.D. Pa. 1987); *In re: Gruetzmacher*, 145 B.R. 270 (W.D. Wis. 1991); *In re: Solar Equipment Corp.*, 19 B.R. 1010 (W.D. La. 1982); *In re: Presidio Bridge Co.*, 124 B.R. 242 (Bankr. W.D. Tex. 1991).

**6.** Cabe señalar que, previo a la reapertura del caso, el Tribunal de Quiebras había emitido una orden permitiendo la ejecución de la sentencia en cuestión.